**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

**FILED**

98 APR 29 PM 12:21

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ANGELIA PRESSNELL, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| vs. | )   Civil Action No. CV96-S-3079-NE |
| | ) |
| ALABAMA SOUTHEASTERN MECHANICAL, | ) |
| INC., | ) |
| | ) |
|     DEFENDANT. | ) |

**ENTERED**

APR 2 9 1998

### MEMORANDUM OPINION

Alabama Southeastern Mechanical, Inc. ("ASM") hired Angelia Pressnell in January of 1996 to assist in the installation of insulation at Huntsville Hospital in Huntsville, Alabama.   Such work previously had been performed for the hospital by an entity known as the "Cox Corporation."   Angelia Pressnell was a Cox employee.  She worked as an "insulator helper," and was paid a wage of $8.00 an hour.

The maintenance contract between Cox and Huntsville Hospital expired on the last day of December 1995, and the hospital elected not to renew it.  Instead, the hospital entered into a maintenance agreement with ASM, to become effective on January 3, 1996.  ASM solicited the services of a number of Cox employees, including plaintiff, to aid it in performance of the new contract.

Pressnell alleges ASM paid her lower wages than similarly situated male employees, and that she was subjected to retaliation when she complained about that wage disparity.  Pressnell seeks

20

damages under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.,* and the Equal Pay Act, 29 U.S.C. § 206(d).

The action presently is before the court on defendant's motion for summary judgment and motion to strike portions of plaintiff's evidentiary submissions. Upon consideration of pleadings, briefs, and evidentiary submissions, this court concludes the motion to strike is due to be granted in part and denied in part. The motion for summary judgment also is due to be granted in part and denied in part.

## I.   MOTION TO STRIKE

ASM's motion to strike is premised upon alleged inconsistencies between plaintiff's deposition testimony and her affidavit submitted in opposition to summary judgment. The standard for resolving such disputes was defined by this Circuit in *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987), as follows:

> The law in this circuit is that a party cannot give "clear answers to unambiguous questions" in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. ... Thus, our cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit.

2

## A.   Hiring - "Insulator Helper"

Plaintiff testified in deposition that ASM hired her to work as an "insulator helper": a position of less skill, training, and experience than a fully-qualified "insulator."

> Q.   You were the only insulator helper; is that right, at ASM?
>
> A.   Yes, sir.
>
> . . .
>
> Q.   Okay.  And you knew you were going to be going in as an insulator helper with ASM, right?
>
> A.   Yes, sir.

(Plaintiff's deposition at 174-75, 242 (emphasis supplied).) Plaintiff's affidavit contradicts that testimony.

> 3.   Just prior to entering the employment of ASM, there was a meeting between the owners of ASM, Lonnie Sawyer and the other prospective employees who intended on leaving Cox Corporation.  I was the only female.  This meeting took place in December of 1995 shortly before the application for employment was made and completed. During this meeting I was told specifically by Mr. Jerry Self that "if the work was performed I would be paid accordingly".  This meant to me that I would be paid just as the men and consistent with my work as an insulator. My application also indicated that my position would be that of an insulator.  I was further told by Mr. Lonnie Sawyer at that time that I should not discuss this matter of pay with the owners of the company as they did not know what I would be earning.

(Plaintiff's affidavit ¶ 3 (emphasis supplied).)  This court finds an inherent inconsistency between plaintiff's deposition testimony and her attempt, by affidavit, to claim she was hired by defendant

3

to work as "an insulator." She fails to explain the contradiction and, therefore, the affidavit assertion is due to be disregarded.

## B. Inquiry into Plaintiff's Experience

Plaintiff testified that she attended a meeting in which ASM solicited Cox employees to work for ASM after it assumed responsibility for hospital maintenance. During that meeting, she "told the owner of ASM that according to the usual industry standards [she] still had about a year and a half before [she] could become an insulator." (Plaintiff's deposition at 241.) ASM alleges that testimony conflicts with the following paragraph of plaintiff's affidavit:

> 9. At the initial meeting at hire in there was no discussion regarding the rate of pay we would receive based upon experience nor was there any inquiry on each employee's individual experience.

(Plaintiff's affidavit ¶ 9 (emphasis supplied).) There is no "inherent inconsistency" between the deposition and affidavit. Plaintiff testified in deposition that she volunteered certain information; her affidavit simply asserts that ASM's officers made no independent inquiry of "each employee's individual experience" at the "initial meeting."

## C. Rate of Pay Based on Experience

Plaintiff testified in deposition that she was paid, "in large part," based upon her experience. (Plaintiff's deposition at 227.) Defendant contends plaintiff's affidavit contradicts that testimony, but does not direct this court to any particular

4

statement. After reviewing the entire affidavit, this court finds
no "inherent inconsistency" between plaintiff's deposition and
affidavit.

**D.   Rate of Pay as "Insulator" vs. "Insulator Helper"**

Plaintiff testified as follows regarding the wages she
expected when she began work for ASM:

   Q.   And at that time [*i.e.*, the initial meeting with
        ASM executives] you were not expecting — in late
        December you were not expecting to be paid
        insulator wages, were you, because you lacked a
        year and a half [of work experience], right?

   A.   Correct.

(Plaintiff's deposition at 242 (emphasis supplied).)   That
testimony inherently conflicts with the third paragraph of
Presnell's affidavit (set out in § I.A above), where she states she
left the meeting believing she "would be paid just as the men and
consistent with my work as an insulator."

**E.   Conclusion**

This court finds ASM's motion to strike is due to be granted
with regard to plaintiff's contention that she would be hired as an
"insulator," and, that she would be paid the wages due an
"insulator"; the motion is due to be denied with regard to
plaintiff's testimony regarding inquiries about her experience, and
the rate of pay based upon that experience.

5

## II.  FACTS

### A.  Wage Disparity

ASM's president, Jerry G. Self, met with Cox Corporation employees in December of 1995, to discuss the prospect of continued employment by ASM when it assumed responsibility for the hospital's maintenance work.  During that meeting, Pressnell told Self she lacked approximately eighteen months of experience before she could be classified according to industry standards as an "insulator."[1] (Plaintiff's deposition at 33-34, 111, 241-42; Sawyer affidavit ¶ 5.)  Self allegedly replied: "if the work was performed [she] would be paid accordingly." (Plaintiff's affidavit ¶ 3.)  Nevertheless, due to her lack of experience, Pressnell was "not expecting to be paid insulator wages." (Plaintiff's deposition at 242.)  Instead, she recognized that ASM was hiring her as an "insulator helper." (*Id.*)  ASM hired Pressnell at a wage of $8.50 an hour.  Self offered the following affidavit testimony to justify that wage:

> Prior to hiring the plaintiff as an employee of ASM, I reviewed her current rate of compensation at Cox and considered her level of experience and skill.  My decision to pay her $8.50 per hour was based upon all of those factors, as well as the fact that she accepted employment at that rate, which was $.50 per hour more than the rate she was earning at Cox.

(Self affidavit ¶ 3.)

Pressnell claims that the work she performed for ASM was greater than that of a simple "insulator helper":

---

[1]In general, the designation of "insulator" requires five years of experience.  (Plaintiff's deposition at 109.)

6

> 4. My employment with ASM consisted of duties of all trades, although I primarily did insulation work. In other words, I did insulation work as a principle [sic] and also did insulation work in a helper capacity. Further, all of the other employees that came from Cox Corporation would work as principles [sic] in crafts and also as helpers. It would not be unusual for any of the employees one minute to be doing insulation work and the next minute be doing HVAC work.
>
> 5. It should be noted that at no time were we union nor were we limited to the tasks we were required to perform for ASM as a result of craft classification. The employee manual simply stated as was also told me at hiring that I would receive equal pay if I did the work.
>
> 6. This was simply not true, as I properly performed my tasks in all crafts either as a principle [sic] or helper as my male counterparts but was not paid the same rate.

(Plaintiff's affidavit ¶¶ 4-6.)

ASM admits Angelia Pressnell was paid less than certain male employees, but attempts to provide explanations for those disparities. ASM notes that it hired three male employees who also had previously worked for Cox Corporation as insulators, and that each of those men received higher wages than plaintiff. The first, Robert Taylor, allegedly was paid more because he assumed management responsibilities. (Defendant's brief at 8-9; see plaintiff's deposition at 125-26.) The other two male insulators were Dwayne Henson and plaintiff's husband, Mickey Pressnell. (Plaintiff's deposition at 82-82, 101.) Henson and Mickey Pressnell allegedly were more experienced, fully-qualified, "insulators"; and, plaintiff admits both men were better qualified

7

to perform the entire range of insulation tasks than was she. (*Id.* at 101-02, 125-26; 129-30, 132.)

Angelia Pressnell nevertheless attempts to compare herself to Henson and her husband, Mickey Pressnell, as well as ASM employees in other positions:

> 7. I have personal knowledge that at the time of my hiring, a truck driver from Cox Corporation was hired as a pipe fitter and given "pipe fitter pay", contrary to the fact that he had no prior experience in the pipe fitting field. I was paid four (4) dollars less than my male counterparts who were primarily performing insulation tasks with same [*sic*] equal training, education and experience. My job content, in what I had to do, was no different than the other insulators. The jobs that I was asked to do required equal skills as my male counterparts, and similar working conditions.

(Plaintiff's affidavit ¶ 7.) Pressnell also represents in her brief that "another insulator helper," Jamie English, was "paid significant amounts of money more than" was she. (Plaintiff's brief at 3.)

ASM notes that Angelia Pressnell's affidavit does not identify the employee who allegedly received "pipe fitter pay" and, thus, she does not present a valid comparator. Nevertheless, ASM speculates that plaintiff is referring to Jamie Robertson. If that is correct, then it should be observed that ASM hired Robertson from Cox Corporation as a sheet metal apprentice at a wage of $8.50 an hour: a rate identical to plaintiff. (Robertson affidavit ¶ 5.)

8

ASM also demonstrates that Jamie English is not a valid comparator. In fact, Pressnell's deposition testimony establishes that English was not an "insulator helper."

> Q. You were the only insulator helper; is that right, at ASM?
>
> A. Yes, sir.
>
> Q. Jamie English was in the sheet metal area?
>
> A. Yes, sir.

(Plaintiff's deposition at 174-75 (emphasis supplied).) Further, English possessed one and a half years of apprenticeship training (which Pressnell lacked), and he had been employed by Cox Corporation for a longer period than Pressnell on the date both were hired by ASM. (Sawyer affidavit ¶ 4.)

## B. Retaliation and Constructive Discharge

Pressnell's primary evidence of retaliation and constructive discharge is found in the following paragraph of her affidavit:

10. I inquired of Robert Taylor, who was my Foreman, when I would receive equal pay for my work and was then moved from my desired craft and told I would be given a task that a woman could do. This task involved cleaning [air conditioner] filters. This was approximately one week prior to my termination with ASM.

Pressnell testified during deposition that the task of cleaning air conditioner filters was not "overly taxing or overly dirty or overly unpleasant." (Plaintiff's deposition at 169.) Even so, she objected to the assignment because it did not advance her skills as an insulator. (*Id.* at 168-69.)

9

Pressnell also asserts "she was followed by her immediate supervisor to and from lunch, [her] telephone calls [were] monitored, and [she] was even caused to cry as a result of confrontation with her supervisors." (Plaintiff's brief at 5-6.) Plaintiff's deposition testimony paints a slightly different picture, however.

During the period shortly before her termination, Angelia Pressnell occasionally was late returning from her lunch break. (Plaintiff's deposition at 177-778.)    Pressnell's supervisor, Lonnie Sawyer, began to closely monitor the times that she would leave and return.    (*Id.* at 156-57.)    Pressnell became "highly upset" over such close scrutiny on March 29, 1996, and telephoned her foreman, Robert Taylor.    (*Id.* at 157.)    She admits that she began "ranting and raving" about Sawyer's supervision, and told Taylor that she "wanted to be laid off" if she was required to continue cleaning air conditioner filters.    (*Id.* at 157-58.) Pressnell also complained directly to Lonnie Sawyer.

> And all [Sawyer] would keep saying is, "You can quit your whining and go back and do the job I gave you to do, or you can quit, or I'll fire you."  And he just kept on, and he kept on, he wouldn't listen to anything.
>       And finally I started to break down into tears, and before I was going to sit there and let him see me cry, like a big baby or something, and be even more humiliated, I just told him, "Fine.  So there is no more problems, I quit."

(*Id.* at 161-62.)

10

## III. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence

11

presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

12

## B.    Equal Pay Act

### 1.    Burdens of proof

The burdens of proof for actions based upon the Equal Pay Act

are as follows:

> A *prima facie* case of an EPA violation is shown if
> an employer "pays different wages to employees of
> opposite sexes 'for equal work on jobs ... [requiring]
> equal skill, effort, and responsibility, and which are
> performed under similar working conditions.'" ... Once
> a *prima facie* case is demonstrated, to avoid liability
> the employer must prove by a preponderance of the
> evidence ... that the differential is justified by one of
> four exceptions set forth in the EPA, ....    Those
> exceptions are:    "(i) a seniority system; (ii) a merit
> system; (iii) a system which measures earnings by
> quantity or quality of production; or (iv) a differential
> based on any other factor other than sex."    29 U.S.C. §
> 206(d)(1).    The employer bears the burden of proof for
> these affirmative defenses ....    The burden is a "heavy
> one," ... because the "defendants must show that the
> factor of sex provided no basis for the wage
> differential," ....    If the defendant fails to meet this
> burden, the court  must enter judgment for the plaintiff.
> ...  When the defendant overcomes the burden,  the
> plaintiff must rebut the explanation by showing with
> affirmative evidence that it is pretextual or offered as
> a  post-event  justification  for  a  gender-based
> differential. ... If plaintiff is able to create the
> inference of  pretext, there is an issue which should be
> reserved for trial.

*Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1994)(citations

omitted).

### 2.    Factors other than sex

For purposes of summary judgment, ASM declines to address

plaintiff's *prima facie* case and, instead, raises the affirmative

defense of a "factor other than sex" to explain the wages paid to

plaintiff.  Specifically, ASM contends it relied upon plaintiff's

13

experience and her prior pay at Cox Corporation when determining the wage rate at which she was hired.[2]

The Eleventh Circuit holds that "prior salary alone cannot justify pay disparity under the EPA." *Irby*, 44 F.3d at 955 (internal quotation marks omitted). Even so, "an Equal Pay Act defendant may successfully raise the affirmative defense of 'any other factor other than sex' if he proves that he relied upon prior salary and experience in setting a 'new' employee's salary." *Id.* (emphasis in original). Plaintiff's wage rate was determined after ASM president Jerry Self reviewed her prior rate of pay at Cox, her level of experience, and her skill. (Self affidavit ¶ 3.) Accordingly, this court finds that defendant has established a "factor other than sex" which explains the disparity in pay.

### 3.   Plaintiff's rebuttal

#### a.   Payment of equal wages

Plaintiff first argues that defendant's asserted reason for the pay disparity is pretextual, because it is "completely contrary to the statements alleged in the initial meeting, that 'you would be paid equal wages' which is akin to top wages for a particular craft, if the work was performed ...." (Plaintiff's brief at 4.) This court can find no reference to that alleged statement in the record. Rather, plaintiff allegedly was told "if the work was performed I would be paid accordingly." (Plaintiff's affidavit ¶ 3 (emphasis supplied).)

---

[2]*See, e.g.*, Self affidavit ¶3 (quoted on page 6 *supra*.)

14

That statement does nothing to demonstrate pretext: *i.e.*, it does not suggest that plaintiff's experience and prior rate of pay "were not the real reasons" for the beginning wage rate offered to her. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)(Title VII case discussing plaintiff's burden of demonstrating pretext). Plaintiff may have been promised to be "paid accordingly" — "if the work was performed" — but it does not necessarily follow that she was promised pay equivalent to those with more experience.

### b.  Employee handbook

Plaintiff also claims that ASM's employee handbook contains provisions contradicting its contention that plaintiff's wage disparity was based on her prior experience and pay. (Plaintiff's brief at 4.)   There is no contradiction, however, because the handbook provides:

> Your base rate of compensation is determined at the time of hire-in.  Generally this rate is established in agreement between the employee and management.  This rate is a product of determination of value, productivity, level of affordability, and within the wage scale for the job description they have been hired for, <u>in relation to the employees [sic] experience level and education, as well as other background data</u>.  It is the intent of the company that similar skilled employees be classified within similar job descriptions and compensated equally. As determined by the Fair Labor Standards Act there will be equal pay for equal work given equal skill, equal effort, equal responsibility, and similar working conditions.

(Plaintiff's exhibit 4 at 4 (emphasis supplied).)

15

### c. **Work assignments**

Plaintiff further claims that ASM's stated reason is pretextual, because "each of the employees that came over from Cox were required to work in all craft [sic] and work as principles [sic] and as helpers." (Plaintiff's brief at 4.) Again, that argument does not cast doubt upon ASM's stated reason for the pay disparity. Plaintiff may have performed work similar to other ASM employees, but she was paid less than those who possessed more experience, and whose wage at Cox Corporation had been at a higher scale than hers.

### d. **Classification of other employees**

Finally, plaintiff claims ASM's asserted reason is pretextual because ASM

> did in fact and in a pretextual way classify employees
> with no experience at craft positions without any
> experience. For example, paying "pipe fitter pay" to a
> former truck driver from Cox and paying Jamie English,
> more funds ... than the plaintiff.

(Plaintiff's brief at 4.) ASM did not rely upon plaintiff's job classification as the basis for her rate of pay, however. Rather, ASM relied upon her experience and prior wage. Thus, job classifications do not demonstrate that ASM's reasons were not the real reason for the wage disparity.

### 4. **Conclusion**

Plaintiff has failed to offer any evidence that ASM's asserted reason for wage differences with male employees is pretextual.

Accordingly this court finds that ASM is entitled to summary
judgment on plaintiff's Equal Pay Act claim.

## C. Title VII Wage discrimination

### 1. Title VII analysis

Plaintiff bears the burden of proving by a preponderance of
the evidence that ASM intentionally discriminated against her
because of her gender. That can be done either by direct or.
circumstantial evidence. When, as here, the evidence of intent is
circumstantial in nature,[3] the Supreme Court has prescribed an
analytical process to evaluate the strength of plaintiff's proof.
In three decisions rendered over two decades, the Supreme Court
"developed a formula for shifting evidentiary burdens between
plaintiff and defendant which permits the establishment of
intentional discrimination without direct evidence of unlawful
motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09,
at 39-40 (3d ed. 1996). The order and allocation of burdens of
proof, persuasion, and production were first defined in *McDonnell
Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973), then elaborated in *Texas Department of Community Affairs v.
Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d

---

[3]Plaintiff contends she possesses direct evidence of discrimination,
because Robert Taylor allegedly told her that she "would be given a task that a
woman could do." (Plaintiff's brief at 5; plaintiff's affidavit ¶ 10.)"[D]irect
evidence relates to actions or statements of an employer reflecting a
discriminatory or retaliatory attitude <u>correlating</u> to the discrimination or
retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d
1549, 1555 (11th Cir. 1990)(emphasis supplied). Taylor's alleged statement has
no correlation to (and in fact had no effect upon) plaintiff's pay rate, and thus
is not direct evidence of wage discrimination.

17

207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The analytical structure developed by that trilogy has three steps, the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

The first step is satisfied when the plaintiff establishes a *prima facie* case. A plaintiff establishes a *prima facie* case of sex-based wage discrimination under Title VII by "demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B&B Cash Grocery Store*, 975 F.2d 1518, 1529 (11th Cir. 1992).

At the second stage of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination raised by plaintiff's demonstration of a *prima facie* case. A defendant may do so by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

18

## 2. Plaintiff's *prima facie* case

ASM alleges that "plaintiff failed to show a prima facie case
of wage discrimination under Title VII because she failed to offer
any evidence that she occupied a job 'similar to higher paid
males.'" (Defendant's brief at 20.)  Plaintiff fails to respond to
that argument, and summary judgment is warranted on that basis
alone.  *See Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga.
1993), *aff'd*, 44 F.3d 1008 (11th Cir. 1995)("Summary judgment is
appropriate since Plaintiff failed to respond to [defendant's]
argument on this issue"); *see also Wiley v. Earl's Pawn & Jewelry,
Inc.*, 950 F. Supp. 1108, 1113 n.4 (S.D. Ala. 1997); *Southern Nevada
Shell Dealers Association v. Shell Oil*, 725 F. Supp. 1104, 1109 (D.
Nev. 1989).

## 3. Defendant's asserted reason for the pay disparity

Even if plaintiff could establish that she occupied a position
"similar to higher paid males," she has not rebutted ASM's asserted
reason for the pay disparity.  As noted in the discussion of
plaintiff's Equal Pay Act claim, she was paid less, because she was
less experienced and was paid less in her prior job at Cox
Corporation.

In rebuttal, plaintiff claims that "none of the employees,
notwithstanding, were never [*sic*] screened for work experience
...." (Plaintiff's brief at 5.)  Plaintiff apparently believes
there was no screening for experience, because ASM executives did

19

not inquire about experience during the initial meeting at which plaintiff and others were asked to leave Cox Corporation and work for ASM:

    3.    This solicitation consisted of a meeting of the owners of ASM, Lonnie Sawyer and the potential employees leaving Cox Corporation for employment as ASM. At this meeting there was no inquiry of our skills, skill level, education, or work history. We were to be given more opportunity for pay.

(Mickey Pressnell affidavit ¶ 3.)   Thus, plaintiff's argument assumes that the only opportunity for ASM to screen former Cox employees for experience was during that meeting.

    That assumption ignores the fact that plaintiff (and presumably all former Cox Corporation employees) submitted an application for employment detailing previous work experience. For example, plaintiff submitted her application on December 22, 1995,[1] listing her last four positions in the insulation industry. (Plaintiff's exhibit 3.) Moreover, plaintiff voluntarily informed ASM's owners during the meeting that she lacked eighteen months of experience before she could be classified as an "insulator." (Plaintiff's deposition at 241-42.)   This court thus finds no evidence to support plaintiff's conclusory allegation that there was no screening process for experience.

    Plaintiff also alleges pretext, based on her claim that the Cox Corporation employees were never "truly classified and paid wages consistent with their crafts or alleged crafts." (Plaintiff's brief at 5.) As noted in the discussion of the Equal

---

[1]Plaintiff was hired by ASM on January 3, 1996. (Sawyer affidavit ¶ 3.)

Pay Act, however, ASM does not contend it paid plaintiff based solely upon her classification. Rather, she was paid according to her experience and prior wage. Plaintiff has produced no evidence demonstrating that experience and prior wage are not the "real reasons" for pay disparity. Accordingly, this court finds that plaintiff has failed to meet her burden of demonstrating pretext, and summary judgment is appropriate.

## D. Title VII - Retaliation

The analysis of Title VII retaliation claims is conducted in the same manner as the analysis of disparate treatment claims. *See Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600, *reh'g denied*, 800 F.2d 267 (11th Cir. 1986). Thus, plaintiff must establish a *prima facie* case by providing evidence of: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal linkage between the protected expression and adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). For purposes of summary judgment, ASM focuses on the second and third elements of Pressnell's *prima facie* case.

### 1. Adverse employment action

Pressnell contends her alleged constructive discharge was an adverse employment action.[5] To prove constructive discharge, she

---

[5]Proof of constructive discharge fulfills the second element of a retaliation claim. *See* Meeks v. Computer Associates International, 15 F.3d 1013 (11th Cir. 1994)(constructive discharge constituted "adverse employment action" in retaliation claim). Further, to recover for retaliation, "the plaintiff 'need not prove the underlying claim of [gender-based wage] discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed." *Id.* (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)).

21

must establish her working conditions were so intolerable that a reasonable person in her position would feel compelled to resign. *Kilgore v. Thompson & Brock Management*, 93 F.3d 752, 754 (11th Cir. 1996).

Plaintiff's constructive discharge claim is premised upon the following evidence: (1) after complaining about her pay to Robert Taylor, she was told she "would be given a task that a woman could do," and assigned to clean air conditioners; (2) thereafter, the duration of her lunch breaks was monitored by Lonnie Sawyer; (4) after complaining about her treatment to Lonnie Sawyer, she was told "You can quit your whining and go back and do the job I gave you to do, or you can quit, or I'll fire you." (*See* plaintiff's brief at 5-6.[6])

Other courts have found that neither close observation of the duration of plaintiff's work,[7] nor dissatisfaction with job assignments will support a claim for constructive discharge.[8] Even so, "the constructive discharge standard requires

---

[6]In her brief, plaintiff also claims her telephone calls were "monitored." (Plaintiff's brief at 6.) Plaintiff does not mention that alleged monitoring in her deposition or affidavit, however. In fact, the only reference to telephone calls is found in Lonnie Sawyer's deposition. Sawyer testified that he was displeased with the number of personal telephone calls plaintiff made while on the job. (Sawyer deposition at 44-45.) That observation cannot accurately be considered "monitoring." Moreover, there is no evidence that the alleged monitoring had any effect on plaintiff's working conditions, because she presented no testimony on that subject.

[7]*See* Clowes v. Allegheny Valley Hospital, 991 F.2d 1159, 1160-62 (3d Cir. 1991) (no constructive discharge when plaintiff alleged overzealous supervision of work); Johnson v. Bunny Bread Co., 646 F.2d 1250, 1256 (8th Cir. 1981) (no constructive discharge where plaintiff was closely monitored by supervisors).

[8]Summit v. S-B Power Tool, 121 F.3d 416, 421 (8th Cir. 1997); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994); Stetson v. NYNEX Service Co., 995 F.2d 355, 360 (2d Cir. 1993).

22

consideration of working conditions as a whole rather than one by one." *Kader v. Paper Software, Inc.*, 111 F.3d 337, 340 (2d Cir. 1997); *see also DeNovellis v. Shalala*, 124 F.3d 298, 311 (1st Cir. 1997). Furthermore, decisions from the Second and Third Circuits demonstrate that a threat of termination, combined with other adverse employment conditions, may be sufficient to support a claim of constructive discharge. *See Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360-62 (2d Cir. 1993); *Clowes v. Alleghey Valley Hospital*, 991 F.2d 1159, 1161 (3rd Cir. 1993); *Riedinger v. D'Amicantino*, 974 F.Supp. 322, 330 (S.D.N.Y. 1997)("A constructive discharge may be inferred when an employer threatens an employee with termination").

When considered in a light most favorable to plaintiff, the evidence demonstrates that, after complaining about her pay, she was assigned unpleasant duties outside her chosen trade, subjected to close supervision, and threatened with termination. This court finds that a reasonable person subjected to those working conditions (considered as a whole) could feel compelled to resign. Plaintiff has thus presented sufficient evidence of an adverse employment action.

## 2. Causal connection

ASM also contends plaintiff cannot demonstrate a causal connection between her complaints about her pay and her constructive discharge. To establish a causal relation between

23

protected activities and adverse employment actions, plaintiff must merely show "the protected activity and the adverse action were not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)(citations omitted). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Id.* (citations omitted). In cases involving a corporate defendant, a plaintiff must show the agent who took the adverse action was aware of the plaintiff's protected expression. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).

ASM contends plaintiff cannot establish a causal nexus, because she never discussed her pay with Lonnie Sawyer, the "supervisor" who allegedly scrutinized her lunch breaks and threatened to terminate her employment. (Plaintiff's deposition at 173.) However, Pressnell did complain about her pay to "foreman" Robert Taylor, who assigned her to clean air conditioner filters under Lonnie Sawyer's supervision approximately one week prior to her resignation. (Plaintiff's affidavit ¶ 10.) Thereafter, Sawyer began close oversight of plaintiff's lunch breaks, and threatened her with termination.

Viewed in a light most favorable to plaintiff, a reasonable jury could find Sawyer possessed knowledge of plaintiff's complaints. Accordingly, this court finds sufficient evidence to fulfill the causation requirement of plaintiff's retaliation claim.

24

### 3. Defendant's asserted reasons for its actions

ASM makes the conclusory statement that it "has offered facts to establish the legitimate non-discriminatory reason for its actions" (defendant's brief in support of summary judgment at 22), but fails to direct this court to those alleged facts. This court finds ASM has identified no facts establishing a legitimate, nondiscriminatory reason for the alleged constructive discharge. Accordingly, summary judgment is inappropriate on plaintiff's retaliation claim.

### IV. CONCLUSION

For the foregoing reasons, this court concludes summary judgment is appropriate as to plaintiff's claims for wage discrimination under Title VII and the Equal Pay Act. Defendant's motion for summary judgment is due to be denied on plaintiff's claim for retaliation under Title VII. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the **29ᵗʰ** day of April, 1998.

United States District Judge

25