UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

98 JUL 15 AM 9: 20

U.S. DISTRICT COURT
H.D. OF ALABAMA

ANGELIA PRESSNELL,                    )
                                      )
        PLAINTIFF,                    )
                                      )
vs.                                   )   Civil Action No. CV96-S-3079-NE
                                      )
ALABAMA SOUTHEASTERN MECHANICAL,)
INC.,                                 )
                                      )
        DEFENDANT.                    )

**ENTERED**

JUL 1 5 1998

## MEMORANDUM OPINION

Plaintiff, Angelia Pressnell, commenced this action under
Title VII of the Civil Rights Act of 1964, as amended by the Civil
Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.,* and the Equal Pay
Act, 29 U.S.C. § 206(d). She claimed that defendant, Alabama
Southeastern Mechanical, Inc. ("ASM"), paid her lower wages than
similarly situated male employees. She further alleged that ASM
retaliated against her, and forced her constructive discharge, when
she complained about the alleged wage disparity. This court's
memorandum opinion and order of April 29, 1998 (Documents No. 30 &
31, respectively) dismissed Angelia Pressnell's Equal Pay Act
claims and her Title VII wage discrimination claims, but found
genuine issues of material fact regarding her Title VII retaliatory
discharge claim.

The action presently is before this court on ASM's renewed
motion for summary judgment. ASM seeks to rectify this court's
finding that "ASM .. identified no facts [in support of its motion

*35*

for summary judgment] establishing a legitimate, nondiscriminatory reason for [Pressnell's] alleged constructive discharge." (Doc. No. 30 at 25.) ASM argues there was no legal justification for Pressnell's resignation: as a matter of law, therefore, she can make no claim for constructive discharge. Upon consideration of the pleadings, briefs, evidentiary submissions, and oral arguments of counsel, this court concludes that it erred when holding that "summary judgment is inappropriate on plaintiff's retaliation claim" (id.), and, that the renewed motion for summary judgment is due to be granted.

## II. FACTS

### A. Retaliation and Constructive Discharge

The facts of this case are fully set forth in memorandum opinion entered April 29, 1998. Accordingly, they will not be reiterated here, except to note that Angelia Pressnell was hired by ASM to work as an "insulator helper." As such, she was paid less than fully trained, more experienced, "insulators."

Pressnell's primary evidence of retaliation and constructive discharge was found in the following paragraph of her affidavit submitted in opposition to summary judgment:

> 10. I inquired of Robert Taylor, who was my Foreman, when I would receive equal pay for my work and was then moved from my desired craft and told I would be given a task that a woman could do. This task involved cleaning [air conditioner] filters. This was approximately one week prior to my termination with ASM.

2

Pressnell testified during deposition that the task of cleaning air conditioner filters was not "overly taxing or overly dirty or overly unpleasant." (Plaintiff's deposition at 169.) Even so, she objected to the assignment because it did not advance her skills as an insulator. (*Id.* at 168-69.) Pressnell also asserted "she was followed by her immediate supervisor to and from lunch, [her] telephone calls [were] monitored, and [she] was even caused to cry as a result of confrontation with her supervisors." (Plaintiff's brief at 5-6.) Her deposition testimony painted a slightly different picture, however.

During the period shortly before her termination, Angelia Pressnell occasionally was late returning from her lunch break. (Plaintiff's deposition at 177-78.) Pressnell's supervisor, Lonnie Sawyer, began to closely monitor the times that she would leave and return. (*Id.* at 156-57.) Pressnell became "highly upset" over such close scrutiny on March 29, 1996, and telephoned her foreman, Robert Taylor. (*Id.* at 157.) She admits that she began "ranting and raving" about Sawyer's supervision, and told Taylor that she "wanted to be laid off" if she was required to continue cleaning air conditioner filters. (*Id.* at 157-58.) Pressnell also complained directly to Lonnie Sawyer.

> And all [Sawyer] would keep saying is, "You can quit your whining and go back and do the job I gave you to do, or you can quit, or I'll fire you." And he just kept on, and he kept on, he wouldn't listen to anything.
> And finally I started to break down into tears, and before I was going to sit there and let him see me cry, like a big baby or something, and be even more

3

humiliated, I just told him, "Fine. So there is no more problems, I quit."

(*Id.* at 161-62.)

## B. Holding of the April 29, 1998 Memorandum Opinion

This court's previous memorandum opinion found genuine issues

of material fact regarding Angelia Pressnell's claim for

retaliatory constructive discharge.

> When considered in a light most favorable to plaintiff, the evidence demonstrates that, after complaining about her pay, she was assigned unpleasant duties outside her chosen trade, subjected to close supervision, and threatened with termination. This court finds that a reasonable person subjected to those working conditions (considered as a whole) could feel compelled to resign. Plaintiff has thus presented sufficient evidence of an adverse employment action.

(Doc. No. 30 at 23.) This court also made the following finding:

> This court finds ASM has identified no facts establishing a legitimate, nondiscriminatory reason for the alleged constructive discharge. Accordingly, summary judgment is inappropriate on plaintiff's retaliation claim.

(*Id.* at 25.)

## C. Additional Facts Submitted in Renewed Motion for Summary Judgement

### 1. Work assignments

In its renewed motion for summary judgment, ASM attempts to

establish that Pressnell's assignment to clean air conditioning

filters was not discriminatory. ASM presents evidence establishing

that all of its employees were required to perform cleaning work,

and that Pressnell did not object to that work. ASM first relies

upon Pressnell's deposition:

4

Q.   Did some of the sheet metal workers sometimes do
     maintenance work around there, cleaning type work and
     that sort of stuff?

A.   Yes, sir.

Q.   Did you see that?

A.   Yes, sir.

Q.   Because it needed to be done?

A.   Yes, sir.

Q.   And did you do some cleaning-type work around there
     sometimes?

A.   Yes, sir.

Q.   And did Mickey?  [i.e., plaintiff's husband, Mickey
     Pressnell, who was classified an "insulator."]

A.   Yes, sir.

Q.   And Dwayne Henson?  [i.e., another fully qualified
     "insulator."]

A.   Yes, sir.

Q.   Your job was to do what the hospital needed in the types
     of areas of work that y'all did, right?

A.   Correct.

Q.   And sometimes that included straight insulation work,
     sometimes it included cleaning up work, right?

A.   Correct.

Q.   And sometimes it meant that the sheet metal people would
     have to do some insulation work?

A.   Correct.

Q.   To get the job done for the customer —

A.   Correct.

Q.   — the hospital, right?

5

A.    Correct.

Q.    And you understood that?

A.    Correct.

Q.    You didn't have any objection to that?

A.    No.

(Plaintiff's deposition at 210-11.)  Angelia Pressnell further acknowledged during deposition that ASM employees were doing "the work that needed to be done" about Huntsville Hospital, and that the hospital needed the air conditioners cleaned.  (*Id.* at 168, 226.)  She objected to the air conditioner work, however, because it did not advance her training to become an "insulator."  (*Id.* at 168.)

ASM also relies upon the supplemental affidavit of plaintiff's supervisor, Lonnie Sawyer:

> 2.    Throughout the time that Angelia Pressnell was employed as an employee of ASM and, earlier, by Cox Corporation ("Cox") there was no agreement or understanding that her job duties would be confined exclusively to her primary skill area. Instead, all of our employees were hired with the understanding that their job duties would be as required by the needs of our customer, Huntsville Hospital. In accordance with that understanding, it was a common practice for ASM employees, including plaintiff and others similarly situated, to be assigned to perform work that was outside their primary skill areas. It was also common practice for all of said ASM employees to perform cleaning and service work, since that was a frequent need at the hospital job site.
>
> At no time was there a collective bargaining agreement in effect between ASM and its employees, nor any limitation on ASM's right to make job assignments to its employees.

6

3.  During plaintiff's employment with ASM, there were
numerous occasions when ASM employees who were assigned
to Huntsville Hospital were asked to work alone.  The
only other "helper" (other than the plaintiff) in the
group of ASM employees assigned to Huntsville Hospital
was Jamison English, a male employee whose primary skill
area was sheet metal.  Mr. English, who was paid during
all of said time as a helper, frequently worked alone and
often performed cleaning work and other duties that were
outside his primary skill area.

4.  It is my recollection, and ASM's records confirm,
that Angelia Pressnell worked less than one week,
beginning March 22, 1996, with another ASM employee
cleaning room air-conditioning units at Huntsville
Hospital, and Mrs. Pressnell's job assignment at that
location was in accordance with the job practices and
understanding that ASM had with its employees.

(Sawyer supplemental affidavit ¶¶ 2-4.)  Indeed, Angelia Pressnell

made the following admission in her affidavit submitted in

opposition to summary judgment:

4.  My employment with ASM consisted of duties of all
trades, although I primarily did insulation work. ... It
would not be unusual for any of the employees one minute
to be doing insulation work and the next minute be doing
HVAC [Heating, Ventilation, and Air Conditioning] work.

(Plaintiff's affidavit ¶ 4.)

### 2.  Close monitoring of lunch breaks

ASM utilizes Angelia Pressnell's deposition testimony in an

attempt to substantiate the basis for Lonnie Sawyer's close

monitoring of her lunch breaks:

Q.  Let me ask you this: You say that Mr. Sawyer started
watching you around leaving lunch and coming back a
couple of days before you left?

A.  Yes, sir.

Q.  Had he been watching you before then?

7

A.   No, sir.

Q.   All right.  And you don't have any complaint about
     anything he had done to you before that time, the last
     two or three days of work?

A.   No, sir.

. . .

Q.   It's correct that you had a 30-minute lunch [break]
     during all the — 30-minute lunch allowance during the
     time you worked at ASM?

A.   Yes, sir.

Q.   It's correct that you sometimes took more than 30
     minutes, isn't it?

A.   Correct.

Q.   And how often did that occur?

A.   The only time that I done it with ASM was at the time
     that he had put me over at East.

Q.   Over at Huntsville [Hospital's] East [facility]?

A.   Yes, sir.  The reason —

Q.   And you were going back over [to Huntsville Hospital's
     Main Facility] and having lunch with your husband during
     that time?

A.   Yes, sir.

Q.   And you were coming back late?

A.   Yes, sir.

Q.   And that was the time that you saw Lonnie over there
     looking to try to determine whether you were being late
     or not at that time, right?

A.   That's what they said he was doing, yes, sir.

Q.   Before that time you hadn't seen him checking up on you
     or anything like that?

8

A.   Not that I know of.

Q.   In fact — Not that you know about, right?

A.   Right.

Q.   He hadn't been doing any — hadn't been bothering you or interfering with your work at all, Lonnie Sawyer, had he?

A.   Not that I know of.

Q.   And Robert Taylor hadn't been interfering with your work or bothering you, had he?

A.   Not that I know of.

Q.   And nobody else had been bothering you or interfering with your work, right?

A.   Yes, sir.

(Plaintiff's deposition at 156, 177-79.)

### 3.   Threat of termination

ASM does not point to any additional evidence regarding the threat of termination by Sawyer that immediately preceded Pressnell's resignation. Instead, ASM takes issue with this court's characterization of the exchange between Sawyer and Pressnell, saying:

> Prior to her resignation, Sawyer did not "threaten" Plaintiff with discharge. His truthful statement to Plaintiff that she could be discharged for cause if she refused to perform her assigned task simply reiterated the obvious, and what Plaintiff admitted that she already knew. According to her own characterization of Sawyer's statement, he merely told her that she did not have the option to be "laid off," as she requested, but rather had three alternatives set out above. One of the alternatives was that, if Plaintiff did not perform the task that she (and another employee) had been assigned, she would be terminated. This was not a "threat." It was merely an accurate review of her options and what the

9

courts have held to be an employer's legal prerogative
under such circumstances.

(Brief in support of renewed motion at 7.)

### III. ANALYSIS

ASM contends the circumstances surrounding Angelia Pressnell's
resignation cannot support a finding of constructive discharge.
The Eleventh Circuit "has traditionally required a high degree of
deterioration in an employee's working conditions," before finding
constructive discharge. *Hill v. Winn-Dixie Stores, Inc.*, 934, F.2d
1518, 1527 (11thCir. 1991). Thus, a plaintiff seeking to prove
constructive discharge must demonstrate working conditions were so
intolerable that a reasonable person in the same position would
feel compelled to resign. *Kilgore v. Thompson & Brock Management*,
93 F.3d 752, 754 (11th Cir. 1996).

"Part of an employee's obligation to be reasonable is an
obligation not to assume the worst, and not to jump to conclusions
too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539
(11th Cir. 1987)(emphasis in original). "A constructive discharge
will generally not be found if the employer is not given sufficient
time to remedy the situation." *Id.* at 754. Where a plaintiff does
not return to work after complaining to corporate management about
allegedly intolerable working conditions, summary judgment is
appropriate. *Kilgore*, 93 F.3d at 754. The rationale for requiring
an employee to remain on the job is "that society and the policies
underlying Title VII will be best served if, wherever possible,

10

unlawful discrimination is attacked within the context of existing employment relationships." *Borque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 66 (5th Cir. 1980).[1]

This court believes that it erred in initially failing to consider the short temporal nexus between Angelia Pressnell's complaints and resignation. Pressnell complained to her foreman, Robert Taylor, about her dissatisfaction with cleaning air conditioning filters and Lonnie Sawyer's close supervision on March 29, 1996. She resigned that same day. Thus, ASM was "not given sufficient time to remedy the situation." *Kilgore*, 93 F.3d at 754. This court cannot find that a reasonable employee in Pressnell's situation would have resigned on March 29, 1996, and summary judgment is appropriate on her retaliatory, constructive discharge claim.

Even if a reasonable person in Angelia Pressnell's situation could have felt compelled to resign, upon reconsideration this court finds legitimate, nondiscriminatory reasons for each of ASM's actions. Pressnell admits that it was not "unusual" to perform work on air conditioning units (plaintiff's affidavit ¶ 4), and that all ASM employees performed cleaning work. (Plaintiff's deposition at 210-11.) Pressnell was assigned that work "since that was a frequent need at the hospital job site." (Sawyer supplemental affidavit ¶ 2.) Plaintiff has presented no contrary

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) *(en banc)*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

evidence indicating that retaliation was the "real reason" for the assignment. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

The evidence also is undisputed that Lonnie Sawyer began to monitor the duration of plaintiff's lunch breaks only after she was late returning from lunch with her husband, and that such scrutiny began only two or three days prior to Pressnell's resignation. Angelia Pressnell admits her tardiness, and presents no evidence that Sawyer failed to monitor other employees who also were late returning from lunch breaks.

Finally, ASM argues that the "threat" of termination was simply part of an outline of options provided by Lonnie Sawyer to Angelia Pressnell, when she requested that she be "laid off" from work. According to ASM, Sawyer simply was advising Pressnell that he could terminate her employment if she refused to perform the work he assigned. The Eleventh Circuit has held:

> When an employee refuses to show up for work after being informed that her failure to do so will result in the loss of her job, the employer has presented a valid, nonretaliatory reason for terminating that employee.

*Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir. 1997). Thus, ASM argues that "since Sawyer could have discharged plaintiff for refusing to work, his articulation of that as one of her options cannot, as a matter of law, be inappropriate." (Brief in support of renewed motion at 11.) To accept that argument at face value would be dangerous: an employer could always characterize its

12

threat of termination as "advice," and thereafter claim that it possessed a legitimate, nondiscriminatory reason for its actions.

Even so, in the present action, this court agrees upon reconsideration with defendant. This court has found neither the air conditioning work, nor the close supervision of lunch breaks to be discriminatory. Thus, this court is presented with a fact situation in which a worker complains to her employer about work conditions which she personally finds unpleasant. Although Lonnie Sawyer responded to those complaints in an insensitive manner, there is no evidence that he did so because of Angelia Pressnell's complaints of wage discrimination. This court thus finds unrebutted, legitimate, nondiscriminatory reasons for ASM's actions, and summary judgment is appropriate.

## IV. CONCLUSION

For the foregoing reasons, this court concludes defendant's renewed motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the _15th_ day of July, 1998.

United States District Judge

13